## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

**BARBARA JOHNSON-LUSTER**                              **CIVIL ACTION**

**VERSUS**                                                        **NUMBER: 19-2235**

**CHRISTINE WORMUTH,**                                    **SECTION: "F" (5)**
**SECRETARY OF THE ARMY, ET AL.**

## ORDER

Before the Court is the Motion for Summary Judgment (Rec. doc. 45) filed by Defendant, Christine Wormuth, Secretary of the Army ("Defendant"). Plaintiff, Barbara Johnson-Luster, has filed an opposition to the motion. (Rec. doc. 66). Having reviewed the pleadings and the case law, the Court rules as follows.[1]

### I.    Background

On April 20, 2015, the U.S. Army Corps of Engineers ("USACE"), New Orleans District, Construction Division hired Plaintiff as an Office Automation Assistant, GS-0326-05. (Rec. doc. 45-4 at p. 116; Rec. doc. 45-10 at p. 360). She was hired through the Louisiana Vocational Rehabilitation Service, which connects disabled employees with employers. (Rec. doc. 45-10 at p. 362-63). To participate in the program, Plaintiff was required to demonstrate evidence of a severe disability. (*Id.* at p. 374). Plaintiff suffers from dysthymia, or chronic depression, and her doctor has diagnosed her with an "adjustment disorder" based on her depression. (Rec. doc. 45-3 at p. 46; Rec. doc. 45-10 at p. 370).

Steve Conravey, Deputy Chief of Construction Division, GS-0810-14, interviewed and selected Plaintiff for the position. (*Id.* at pp. 368, 582). At the time of Plaintiff's hire,

---

[1] The parties consented to proceed before the undersigned pursuant to 28 U.S.C. § 636. (Rec. doc. 23).

Conravey was aware of Plaintiff's disability and her designation as a "Schedule A" appointment, which referred to the federal regulation concerning the hiring of employees with intellectual, severe physical, or psychiatric disabilities. (*Id.* at pp. 367-68, 535-36). Conravey acknowledged, however, that Plaintiff was able to perform the essential functions of her job. (*Id.* at p. 653). Conravey was Plaintiff's first-level supervisor; her second-level supervisor was Stuart Waits, Chief of Construction Division. (Rec. doc. 45-4 at p. 108).

Plaintiff's primary job duties were typing, distributing mail, maintaining the copier, researching, and other administrative duties. (Rec. doc. 45-5 at pp. 125-30). On June 8, 2015, Plaintiff was placed on a 30- to 60-day informal detail from the Construction Division to the New Orleans Area Office ("NOAO"). The NOAO was in the same building but on a different floor. (*Id.* at pp. 133-34). The 30- to 60-day detail was intended to train Plaintiff to gain knowledge of administrative duties from the more senior administrative specialists. (*Id.*). During the detail, Plaintiff reported to Chris Wagner, Assistant Area Engineer, NOAO, although Conravey remained her supervisor of record. (Rec. doc. 45-10 at pp. 392-93).

In late May 2015, Plaintiff complained to Conravey about a co-worker, Marianna Zimmerman, who reprimanded her in front of Waits and also allegedly made inappropriate comments about Plaintiff to another employee, James St. Germain. (*Id.* at pp. 457-63). Conravey discussed these matters with Zimmerman, St. Germain, and Waits. (Rec. doc. 45-9 at pp. 310-12).

On or about June 11, 2015, Conravey met with Plaintiff to discuss several work issues, including training. (Rec. doc. 45-3 at pp. 57-59). During the discussion, Conravey asked Plaintiff if she would consider a "downgrade" to a GS-04 trainee position, but Plaintiff

– believing the "downgrade" to be an actual demotion – stated that she was not interested in any "downgrade."  (Rec. doc. 45-10 at pp. 446-57).

On July 6, 2015, Plaintiff filed an informal Equal Employment Opportunity ("EEO") complaint.    (Rec. doc. 45-3 at pp. 26-27).   On July 17, 2015, after six weeks, Conravey ended Plaintiff's informal detail to the NOAO and returned her to the Construction Division. (Rec. doc. 45-5 at pp. 133-34; Rec. doc. 45-10 at pp. 656-58).   On July 23, 2015, Conravey met with Plaintiff and her co-worker, Patsy Mefferd, to discuss a distribution of administrative duties between the women.  (Rec. doc. 45-10 at p. 615).

On July 24, 2015, Christopher Moore, EEO Manager, met with Plaintiff and Conravey in Conravey's office to informally resolve Plaintiff's concerns outlined in her EEOC complaint.  (Rec. doc. 45-9 at pp. 303-06).  Shortly after that meeting, Plaintiff took leave on August 3, 2015.  (Rec. doc. 45-6 at p. 178).  On August 17, 2015, Plaintiff submitted a letter from her physician, in which he recommended that she be moved to a different supervisor. (Rec. doc. 45-3 at pp. 45-46).  Also on August 17, 2015, Plaintiff filed a formal complaint of discrimination with the Equal Employment Opportunity Commission ("EEOC") in which she alleged that she was subjected to discrimination by Defendant on the basis of race, sex, disability, and retaliation for having filed her original EEO complaint.  (*Id.* at pp. 19-21).

On August 20, 2015, Defendant offered to reassign Plaintiff to the Engineering Division and asked her if this would resolve of her formal EEO complaint, but Defendant did not agree to grant Plaintiff administrative leave for her leave without pay.  (Rec. doc. 45-6 at p. 175).  The next day, August 21, 2015, Plaintiff submitted a notice of resignation, claiming constructive discharge to Conravey via text message.  (Rec. doc. 45-5 at 136-39; Rec. doc. 45-6 at pp. 177-200).   On September 2, 2015, Plaintiff added the claim of

constructive discharge to her formal EEOC complaint.  (Rec. doc. 45-3 at 48-52; Rec. doc. 45-9 at 308).  An investigation was requested and the Investigations and Resolutions Directorate ("IRD") held a fact-finding conference.  (Rec. doc. 45-9 at pp. 316-40).  At the conclusion of the investigation, Plaintiff was provided a copy of the investigative report and requested a hearing before an AJ, but the EEOC declined to set a hearing in the matter.  (Rec. doc. 45-11).  The EEOC entered a final decision and judgment on March 20, 2017, rendering judgment in favor of Defendant and finding that Plaintiff had failed to establish a *prima facie* case that similarly-situated individuals outside her protected class of disability were treated more favorably with regard to race discrimination, sex discrimination, retaliation, and constructive discharge.  (Rec. doc. 45-11).  Plaintiff received her Notice of Right to Sue from the EEOC on December 14, 2019.  (Rec. doc. 1 at p. 13).

On March 8, 2019, Plaintiff filed this lawsuit under, *inter alia*, Title VII of the Civil Rights Act  of 1964, 42 U.S.C. § 2000e *et seq.*, and the Americans with Disabilities Act of 1990, 42 U.S.C. § 12112 *et seq.*, against Defendants Secretary of the Army, Steve Conravey, Richard Hansen, Austin Appleton, Christopher Moore, Jacqueline Johnson, Marian Askegren, Marianna Zimmerman, Robert Barton, and Angela Atkins.   (Rec. doc. 1).  Plaintiff alleges discriminatory conduct in the form of terminating her, failing to promote her, failing to accommodate her disability, unequal terms and conditions of employment, retaliation, and harassment based on her race, color, sex, and national origin.  (*Id.*).[2]  On August 18, 2021, this Court – on the *ex parte*/consent motion of Defendant – dismissed all individual Defendants, leaving Defendant Christine Wormuth, Secretary of the Army, as the sole defendant.  (Rec. doc. 50).

---

[2] For the sake of brevity, specific allegations of discriminatory conduct will be outlined below and are not all included in the factual background.

## II.    Summary Judgment Standard

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam).   "When assessing whether a dispute to any material fact exists, [the Court] consider[s] all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008).   All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) (quoting 10A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2738 (2d ed. 1983)); *see also Little*, 37 F.3d at 1075.   "No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *EEOC v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014).

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'"   *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991) (quoting *Golden Rule Ins. Co. v. Lease*, 755 F. Supp. 948, 951 (D. Colo. 1991)).   "[T]he nonmoving party can defeat the motion" by either countering with evidence sufficient to demonstrate the "existence of a genuine dispute of material fact," or by "showing that the moving party's evidence is so sheer that it

may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings but must identify specific facts that establish a genuine issue for resolution. *See, e.g., id.*; *Little*, 37 F.3d at 1075 ("Rule 56 'mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" (quoting *Celotex*, 477 U.S. at 322 (emphasis added)).

## III.   The *McDonnell Douglas* Standard

The burden shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and its progeny establish the respective burdens and standards for plaintiffs and defendants on a motion for summary judgment for causes of action under Title VII and the Rehabilitation Act. *Duncan v. Univ. of Texas Health Sci. Ctr. at Houston*, 469 F. App'x 364, 368 & n.6 (5th Cir. 2012); *Septimus v. Univ. of Houston*, 399 F.3d 601, 608 (5th Cir. 2005). Under this framework, Plaintiff bears the initial burden of proving a *prima facie* case of retaliation or discrimination by a preponderance of the evidence. *McDonnell Douglas*, 411 U.S. at 802. To establish a *prima facie* case of discrimination under the *McDonnell Douglas* burden-shifting framework, "an employee must demonstrate that she '(1) is a member of a

protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group.'" *Garrison v. Tregre*, No. CV 19-13008, 2021 WL 6050179, at *2 (E.D. La. Dec. 21, 2021) (quoting *Morris v. Town of Independent*, 827 F.3d 396, 400 (5th Cir. 2016) (quoting *Willis v. Cleco Corp.*, 749 F.3d 314, 319-20 (5th Cir. 2014)).  An individual who alleges a retaliation claim under Title VII establishes a *prima facie* case by demonstrating that: (1) she engaged in a protected activity; (2) an adverse employment action occurred; and (3) a causal link existed between the protected activity and the adverse action.  *Septimus*, 399 F.3d at 609.

To establish a *prima facie* case of discrimination under the Rehabilitation Act, a plaintiff must show that she was: (1) disabled within the meaning of the Act; (2) subjected to an adverse action solely by reason of her disability; and (3) otherwise qualified for the program.  *Duncan*, 469 F. App'x at 368.  To be covered by the Rehabilitation Act, a person must have a "physical or mental impairment that substantially limits one or more life activities." 42 U.S.C. § 12102(1)(A).

If a *prima facie* case is made, a presumption of retaliation/discrimination arises, and the burden then shifts to the employer to produce a legitimate, nondiscriminatory reason for the alleged adverse employment action.  *Broadway v. United States Dep't of Homeland Sec.*, Civ. A. No. 04-1902, 2006 WL 2460752, *3 (E.D. La. Aug. 22, 2006). "Defendant's burden is one of production, not persuasion. . . ." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000).  A defendant must merely set forth, through admissible evidence, reasons for its actions which, if believed by the trier of fact, would support a finding that

unlawful discrimination was not the cause of the employment action.  *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993).   This causes the presumption of discrimination to dissipate.  *Smith v. Aaron's Inc.*, 325 F. Supp. 2d 716, 724 (E.D. La. 2004).

At the third stage of the burden-shifting framework, the plaintiff is given a "full and fair opportunity to demonstrate" that the defendant's proffered reason is a pretext for intentional discrimination.  *Price v. Fed. Express*, 283 F.3d 715, 721 (5th Cir. 2002) (citing *Hicks*, 509 U.S. at 507-08).   On summary judgment at the third step, the plaintiff must substantiate her claim of pretext through evidence demonstrating that discrimination lay at the heart of the employer's decision.  *Price*, 283 F.3d at 721.   Even when such a showing is made, however, it will not always be enough to prevent summary judgment if no rational factfinder could conclude that the action was discriminatory.  *Id.*  (citing *Reeves*, 530 U.S. at 148).   As the *Reeves* court explained,

> The ultimate question is whether the employer intentionally discriminated, and proof that the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's proffered reason . . . is correct.  In other words, it is not enough . . . to *dis* believe [sic] the employer; the factfinder must believe the plaintiff's explanation of intentional discrimination.
>      . . . Certainly there will be instances where, although the plaintiff has established a *prima facie* case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory.   For instance, an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred. . . .

530 U.S. 146-48 (internal citations omitted).   "Whether summary judgment is appropriate depends on numerous factors, including the strength of the plaintiff's *prima facie* case, the

probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered." *Id.*

## IV.   Analysis

### A.   Reasonable Accommodation

An employer's failure to provide a disabled employee with a reasonable accommodation that would enable her to perform her job constitutes discrimination.  As defined by the ADA, the term "discrimination" includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability."  42 U.S.C. §12112(5)(A).

To prove a failure-to-accommodate claim, a plaintiff must demonstrate that she is "(1) a qualified individual with a disability, (2) the disability is known to the employer, and (3) the employer failed to make a reasonable accommodation for the known disability." *Stokes v. Nielsen*, 751 F. App'x 451, 454 (5th Cir. 2018).  A claim for failure to accommodate is distinct from a claim of disparate treatment.  *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 703 (5th Cir. 2014).

To meet her burden of articulating a suitable accommodation, a plaintiff need only suggest an accommodation, the costs of which, facially, do not exceed the benefits.  *Karlik v. Colvin*, 15 F. Supp. 3d 700, 709 (E.D. Mich. 2014) (recognizing reasonable accommodations may include environmental mitigation and employee communication).  Reasonable accommodations are "[m]odifications or adjustments that enable a covered entity's employee with a disability to enjoy equal benefits and privileges of employment as are enjoyed by its other similarly situated employees without disabilities." 29 C.F.R. § 1630.2(o)(1).  To be reasonable, the accommodation must not impose an "undue hardship"

on the employer.  42 U.S.C. § 12112(b)(5)(A); *see* 29 C.F.R. §§ 1630.2(o), (p) ("An agency is required to make reasonable accommodation to the known physical and mental limitations of a qualified individual with a disability unless the agency can show that accommodation would cause an undue hardship.").  "[I]n the ordinary case the trier of fact decides whether a suggested accommodation is reasonable." *Breaux v. Bollinger Shipyards, L.L.C.*, No. CV-16-2331, 2018 WL 3329059, at *14 (E.D. La. July 5, 2018) (citing *Alford v. Teleplex, Inc.*, 95 F.3d 48, at *2 (5th Cir. 1996)).

Whether a plaintiff is qualified for a given job – factor (1) – is based on whether (1) the individual can perform the essential functions of the job and (2) if not, whether reasonable accommodation by the employer would enable her to perform those functions. *Sapp v. Donohoe*, 539 F. App'x 590, 595 (5th Cir. 2013) (citing *Chandler v. City of Dallas*, 2 F.3d 1385, 1393-94 (5th Cir. 1993)).  A plaintiff bears the burden of showing a failure to accommodate under the Rehabilitation Act. *Id.* at 596.

The Army concedes that Plaintiff is disabled and admits that Plaintiff and Conravey discussed reasonable accommodations in her initial job interview, in which Conravey determined that Plaintiff was qualified for the position.  (Rec. doc. 45-1 at p. 19).  Indeed, Conravey specifically acknowledged that Plaintiff was able to perform the essential functions of her job.  (Rec. doc. 45-10 at p. 653).  Plaintiff contends that the Army argues only that it met its obligation to provide reasonable accommodations.  (Rec. doc. 45-1 at pp. 19-20).[3]

---

[3] Plaintiff contends that the Army does not argue that her EEOC complaint fails to adequately preserve her accommodation claim.  Plaintiff is correct.  While Defendant mentions that Plaintiff failed to include the claim in her EEOC complaint, and the underlying EEOC judgment does not mention it, Defendant only does so in passing and affirmatively addresses the failure-to-accommodate claim on the merits.  (Rec. doc. 45-1 at p. 18).

Plaintiff cites Conravey's failure to accommodate (*i.e.*, alter) his behavior as evidence of Defendant's failure to accommodate her disability.  Plaintiff notes that Conravey knew from the initial interview that she has a psychiatric disability involving increased stress and anxiety, although he was unclear as to the exact nature of her disability.  (Rec. doc. 45-10 at pp. 582-83).  She maintains that he reasonably should have undertaken efforts to help control her work environment so that she could work effectively.  Instead, she argues that he gratuitously and repeatedly commented on her mental stability in front of others, stating that she had not completed her "psych eval," using her as an example of a suicidal employee, and twice stating that she should not be allowed near the cake knives.  (Rec. doc. 45-3 at p. 27; Rec. doc. 45-10 at pp. 440, 500).  She asserts that he failed to intervene after another employee (Marianna Zimmerman) yelled at and belittled her for asking a work-related question to a supervisor despite knowing that Plaintiff's disability required clear and detailed instructions and the opportunity to ask questions of her supervisors.  (Rec. doc. 45-10 at pp. 434-35).  Plaintiff contends that Conravey also refused to meet with her and Wagner to discuss Plaintiff's disability and accommodations while Plaintiff was on an informal training detail overseen by Wagner, stating that it was not his "management style." (*Id.* at pp. 391-92).  This behavior, she maintains, failed to accommodate her known psychiatric disability – and further exacerbated it when Conravey told Plaintiff, "no one likes you." (*Id.* at pp. 422, 427-28).

Contrary to Plaintiff's assertions, Defendant notes that Plaintiff and Conravey talked about accommodations during her interview.  (*Id.* at pp. 371-72).  Specifically, Plaintiff testified that she asked for flextime during lunch, downtime, and instructions in writing as reasonable accommodations.  (*Id.* at 389-91).  She also requested to be present to discuss

her condition with a new supervisor.  The parties discussed these accommodations during her interview, and again when they reviewed her performance plan on May 5, 2015.  (*Id.* at 394-95).  Plaintiff acknowledged that Conravey agreed to her requests.  (*Id.* at 400-01).  Plaintiff later testified that she asked for an ergonomic chair, that Defendant was attempting to obtain with vocational rehabilitation when Plaintiff resigned.  (*Id.* at 402, 525-26).  Indeed, Conravey himself called Verniece Brown to obtain Plaintiff's ergonomic chair.  (*Id.* at pp. 592-93).  Plaintiff also testified that there were no other similarly-situated employees who were treated more favorably than her with regard to accommodations.  (*Id.* at p. 406).

The evidence of record reveals that Defendant reasonably accommodated Plaintiff for those accommodations *for which Plaintiff asked*.  This is a crucial distinction between Plaintiff's argument and the case law on which she relies.  If an employee fails to inform her employer that she needs a reasonable accommodation in a certain area, it is not simply presumed that an employer should know of such a need.  *See, e.g., E.E.O.C. v. Chevron Phillips Chem. Co.*, LP, 570 F.3d 606, 621 (5th Cir. 2009) ("This court has recognized that 'where the disability, resulting limitations, and necessary reasonable accommodations, are not open, obvious, and apparent to the employer, the initial burden rests primarily upon the employee . . . to specifically identify the disability and resulting limitations, and to suggest the reasonable accommodations.'" (citing *Taylor v. Principal Fin. Grp., Inc.*, 93 F.3d 155, 165 (5th Cir. 1996)); *Clouatre v. Runyon*, 82 F. App'x 972, 973 (5th Cir. 2003)  ("Even if one assumes that Clouatre effectively notified the employer of his mental disability, an employee has an obligation to state how the employer may accommodate him."); *Montgomery v. Barr*, 507 F. Supp. 3d 711, 727 (N.D. Tex. 2020) ("To prevail on a failure to

accommodate claim, a plaintiff must show that the entity knew of the disability and its consequential limitations, either because the plaintiff requested an accommodation or because limitation's nature was open and obvious."); *Green v. Medco Health Sols. of Texas, L.L.C.*, 947 F. Supp. 2d 712, 726 (N.D. Tex. 2013), *aff'd sub nom. Green v. Medco Health Sols. of Texas, L.L.C.,* 560 F. App'x 398 (5th Cir. 2014) ("Defendants cannot be made responsible for failing to accommodate Plaintiff at that time since no specific accommodations were requested by Plaintiff. . . .").  As the Court held in *Taylor*,

> Once such a request [for an accommodation] has been made, "[t]he appropriate reasonable accommodation is best determined through a flexible, interactive process that involves both the employer and the qualified individual with a disability." 29 C.F.R. § 1630.9, App. (1995).  In other words, once an accommodation is properly requested, the responsibility for fashioning a reasonable accommodation is shared between the employee and employer.  29 C.F.R. § 1630.9, App. (1995).  *Thus, it is the employee's initial request for an accommodation which triggers the employer's obligation to participate in the interactive process of determining one.  If the employee fails to request an accommodation, the employer cannot be held liable for failing to provide one.*

93 F.3d at 165 (emphasis added).

While it is uncontroverted that Defendant knew of Plaintiff's psychiatric disability at the time of her interview and initial hire, it is also uncontroverted that Plaintiff never explained the precise nature of her psychiatric disability to Defendant.  Indeed, Colvaney testified that he had never heard of dysthymia until Plaintiff's former counsel sent him a letter in which she used the term.  (Rec. doc. 45-10 at pp. 582-83).  Plaintiff asked for certain, specific accommodations that Defendant provided as best it could, and Plaintiff does not complain of any of the accommodations *that she requested*.  Plaintiff complains only of Conravey's failure to accommodate or alter his behavior toward her, but there is no allegation in Plaintiff's complaint, nor any argument in her brief, that she brought the need

for any such specific accommodation to the attention of anyone at her place of employment. Having failed to bring this failure to accommodate to the attention of anyone precludes her from bringing such a claim now, as her failure to request the accommodation means that a need to provide it was never triggered.  This claim fails.

> **B.      Disparate Treatment**

>> **1.      Unequal Work**

Plaintiff also asserts a disparate-impact claim, alleging that Defendant treated her less favorably than other employees without a psychiatric disability.   When a plaintiff claims disparate treatment and relies on circumstantial evidence, the Court applies the *McDonnell Douglas* burden-shifting framework.  *Wade v. Brennan*, Civ. A. No. 13-5442, 2015 WL 3849310, at *9 (E.D. La. June 22, 2015), *aff'd*, 647 F. App'x 412 (5th Cir. 2016).  Plaintiff also alleges through her deposition testimony that she presents direct evidence of discrimination because Conravey offered her a demotion to a GS-04 employee because he did not understand her disability when he hired her.  (Rec. doc. 45-10 at p. 446).  In short, she maintains that once Conravey understood the nature of her disability, he sought to take adverse action against her.

As noted above, a plaintiff establishes a *prima facie* case of discrimination by demonstrating that: (1) she suffers from a disability and is qualified for the job; (2) she was subject to an adverse employment action; and (3) she was treated less favorably than non-disabled employees.  *Daigle v. Liberty Life Ins., Co.*, 70 F.3d 394, 396 (5th Cir. 1995).  There is no dispute that Plaintiff has a disability and was qualified – at least in Conravey's opinion – to perform the functions of her job.  Accordingly, only the second and third elements are at issue here.

Adverse employment actions are those relating to ultimate employment decisions such as hiring, granting leave, discharging, promoting, demoting, and compensating. *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 282 (5th Cir. 2004); *Breaux v. City of Garland*, 205 F.3d 150, 157 (5th Cir. 2000). Additional examples of adverse employment actions include negative performance evaluations affecting the plaintiff's conditions of employment, modification of job duties, and hostile working conditions that inhibit the plaintiff's ability to do her job. *Fenney v. Dakota, Minnesota & E. R.R. Co.*, 327 F. 3d 707, 717-18 (8th Cir. 2003) (holding that employee subject to conditions creating a constructive discharge or constructive demotion suffered adverse employment action); *Vale v. Great Neck Water Pollution Control Dist.*, 80 F. Supp. 3d 426, 434 (E.D.N.Y. 2015); *Long v. Thomson Inc.*, No. 99-CV-1693, 2000 WL 1586078, at *6 (E.D. Pa. Oct. 24, 2000) (citing *Hernandez-Torres v. Intercontinental Trading, Inc.*, 158 F.3d 43, 47 (1st Cir. 1998). Employment actions that do not affect job duties, compensation, or benefits are not adverse actions within the context of the disparate treatment analysis. *Pegram*, 361 F. 3d at 282. Evidence of disparate treatment includes when the employees are treated less favorably in terms of discipline, training, and work assignments. *See e.g., Duru v. City of Houston*, 30 F.3d 1494 (5th Cir. 1994) (holding employer liable when it "subjected [plaintiff] to disparate treatment in training, work assignments, evaluations, and promotions."); *Clay v. United Parcel Serv., Inc.*, 501 F.3d 695, 711 (6th Cir. 2007) (finding evidence that "UPS deprived [plaintiff] of training to which he was entitled on the basis of his race was evidence of disparate treatment"). The general inquiry under this part of the *McDonnell Douglas* framework is whether Plaintiff was treated less favorably than "other similarly situated employees who

were not members of the protected class, under nearly identical circumstances." *Daigle*, 70 F.3d at 396.

Plaintiff alleges that Defendant gave her more work than any other GS-05 administrative employee. (Rec. doc. 45-10 at 169-76). Specifically, she claims that she was the only GS-05 employee expected to manage credit card accounts, reconcile bank statements, process Purchase Requests and Commitments ("PR&Cs"), keep up with all the log books, and process travel orders, in addition to all her other administrative duties. (*Id.*). Plaintiff argues that when Defendant argues that Plaintiff performed "most" of the tasks of her "predecessor," it is actually comparing her to a higher-rated GS-07 employee, not a similarly-situated GS-05 employee. (Rec. doc. 45-1 at p. 10). Plaintiff compares herself to Patsy Mefferd (white, female, disabled), Marion Brakel (white, female), Jan Detwiler (white, female), and Helois Alphonse (black, female). (*Id.*). All of these employees were GS-05 administrative personnel who worked for Conravey's subordinate supervisors, except for Mefferd, who worked directly for Conravey like Plaintiff. (*Id.*).

Plaintiff also contends that Conravey suggested that she accept a demotion to a GS-04 employee with less pay and, when she declined, urged her to reconsider and reminded her that he would be writing her review as a higher-ranked GS-05 employee instead of a lower-ranked GS-04 employee. (Rec. doc. 45-10 at p. 446). She maintains that Conravey's offer was an ultimatum requiring her to choose between two adverse employment actions – either a demotion or a negative review that would likely affect her ability to transition from an "overhire" into a permanent GS-05 position. Plaintiff further argues that she was subject to working conditions in which she could not reasonably function as a person with a psychiatric disability because she was repeatedly ridiculed and belittled and told "no one

16

likes you."  Being subject to such conditions prevented her from performing her work and compelled her to resign – itself an adverse employment action. *Fenney*, 327 F.3d at 717-18.

While Defendant does not dispute that Plaintiff is a member of a protected class (black, female, and disabled), it argues that Plaintiff is not similarly situated to any of the comparators that she cites except for Mefferd.  A "comparative employee," or comparator, is a similarly-situated individual who is not in the same protected group as the complainant.  *Bryant v. Compass Grp. USA Inc.*, 413 F.3d 471, 478 (5th Cir. 2015).  An employee who proffers a fellow employee as a comparator must demonstrate that the employment actions were taken "under nearly identical circumstances."  *Lee. v. Kansas City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009) (internal quotation omitted).  "The employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories."  *Id.* (internal citations omitted).

Plaintiff worked as a GS-05 Office Automation Assistant directly under Conravey. Brakel, Detwiler, and Alphonse all worked in the area office downstairs for Conravey's subordinate supervisors.  (Rec. doc. 45-10 at 472).  Pursuant to case law, these third parties simply cannot be comparators as they were supervised by others.  *Lee*, 574 F.3d at 260. Only Mefferd was directly under Conravey's supervision.  (Rec. doc. 45-10 at p. 508).  In addition, all of the alleged comparators are female.  Plaintiff has failed to identify a male employee who was treated more favorably under similar circumstances.  Moreover,

Mefferd is disabled.  Thus, Plaintiff can only establish a *prima facie* case of discrimination based on race and only as it relates to Mefferd, who is white.

Defendant does not truly dispute that Plaintiff has established a *prima facie* case of discrimination. Defendant assumes *arguendo*, however, that it has proffered a legitimate non-discriminatory reason for its distribution of administrative duties.  Plaintiff's supervisor, Conravey, explained that Mefferd was initially assigned the timekeeping duty for approximately 60 employees because timekeeping was much more labor-intensive and specialized.  (Rec. doc. 45-10 at p. 607).  Based on Mefferd's intent to retire, Conravey has been reluctant to start her on anything new, so she primarily performs timekeeping duties. (*Id.* at p. 610).  Her timekeeping duties generally keep her busy during the whole day, although she does have other duties, like checking the copy machines.  (*Id.* at pp. 613-14). Conravey explained that on July 23, 2015, after Plaintiff returned from her detail, he met with Plaintiff and Mefferd to discuss distribution of the administrative duties.  (*Id.* at p. 615).  The three discussed all of the administrative tasks in the office (based on Mefferd's intent to retire), and Conravey asked Plaintiff and Mefferd for their input on who would perform which duties.  (*Id.* at p. 615).  It was agreed that Plaintiff would take on some of the timekeeping duties.  (*Id.*).  At the end of the meeting, Conravey thought that everyone had agreed to the distribution of duties.  (*Id.* at pp. 65-26).  He only later discovered that Plaintiff was not happy with her duties.  (*Id.*).

With regard to the other administrative employees on the lower levels of the building who work for Conravey's subordinate supervisors, they service approximately 70 employees, the majority of them field employees and contractors, as opposed to Plaintiff's focus on servicing three offices on the third floor and high-level visitors to Waits.  (*Id.* at pp.

617-18).  While these employees are at the same GS-05 level as Plaintiff, their interactions and responsibilities entail different tasks.  (*Id.* at pp. 617-21).  According to Conravey, it is more difficult to make sure the field employees have their time registered, and there is more travel involved – that is why the division has more administrative personnel than Plaintiff's division.  (*Id.*).  Conravey explained that it is simply a different distribution of duties between GS-05 employees than in Plaintiff's division.  (*Id.*).  However, all of the work is distributed between GS-05 employees.  (*Id.*).  Conravey explained that his intent with Plaintiff when he sent her on the detail to NOAO was so she could learn other duties in the event that she occasionally had to perform such duties after Mefferd retired.  (*Id.*).

Waits also testified that not all GS-05 employees perform the same work.  (*Id.* at p. 561).  Some perform scanning duties, AE[4] filing and logging, timekeeping and other functions, credit cards, and travel orders.  (*Id.*).  He explained that with Plaintiff in the office, Conravey was getting ready to divide up the work to alleviate Mefferd's workload and to reassign some work to both Plaintiff and Mefferd.  (*Id.* at p. 562).  This would give Plaintiff some experience in timekeeping and it would keep everyone from being hounded at the same time.  (*Id.* at pp. 562-63).  He also corroborated testimony that timekeeping for 45 people was an eight-hour per day job for Mefferd.   (*Id.* at p. 563).  The evidence reveals that Plaintiff performed most of the tasks that her predecessor performed, and that there was actual work that Plaintiff's predecessor performed that was not assigned to her.  (*See id.*).

Plaintiff also argues that she can be compared to the other, non-disabled GS-05 employees even though they worked in the NOAO rather than the Office of the Chief.  She

---

[4] This abbreviation is undefined in Wait's deposition transcript.

maintains that Conravey directly or indirectly supervised all of the GS-05 employees, rotated GS-05 employees through the Office of the Chief until Plaintiff was hired, hired Plaintiff to potentially replace any one of three GS-05 employees preparing to retire, and "swapped" Plaintiff with Brakel as part of her training with no formal change in assignment or supervision.  (Rec. doc. at p. 595).  She recognizes that while comparative employees must work in "under nearly identical circumstances," courts do not interpret "nearly identical" as synonymous with "identical." *Lee*, 574 F.3d at 260-61.  She contends that courts properly compare the treatment between employees "when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories."  *Heggemeier v. Caldwell Cty., Tex.*, 826 F.3d 861, 868 (5th Cir. 2016). She asserts that the evidence reveals that Conravey treated the GS-05 employees as essentially interchangeable for most purposes, except that he treated Plaintiff worse.

This is no more than a conclusory argument.  Stating that "I was treated worse than other employees" does not equate to evidence to prove the truth of the statement itself.  It is, in effect, tautology at its finest.  The actual evidence of record reveals that not all GS-05 employees performed the same functions, that Plaintiff performed essentially the same functions as her predecessor, and indeed, performed even fewer functions than her predecessor.  This does not constitute worse treatment than the any other GS-05 employee.

### 2.    Offer of Demotion

Plaintiff also notes that on June 11, 2015, Conravey offered her a "demotion" to a GS-04 trainee position.  She notes that Conravey stated that he did not understand her disability before he hired her.  She considers Conravey's offer of a demotion to be of a

harassing nature based on her race, sex, and disability.  She also claims that this was an act of reprisal because it happened right after she told Chris Moore about the "cake knives" comment.[5]

Defendant argues that Plaintiff has failed to establish a *prima facie* case of disparate treatment or reprisal discrimination on this claim because she did not suffer an adverse employment action concerning a term, condition, or privilege of employment.  Title VII's antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm.  *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006).  To establish an adverse employment action, a plaintiff must demonstrate that "a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  *Id.* at 68.  The requirement that the challenged action be *materially* adverse is important to separate significant from trivial harms.  *See id.* (emphasis added).  "An employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience."  *Id.*  Courts apply the objective standard of a "reasonable" employee to "avoid uncertainties and unfair discrepancies that can plague a judicial effort to determine a plaintiff's unusual subjective feelings."  *Id.* at 68-69.

An "offer" of a demotion – by its own definition – is not a "demotion" and does not constitute an adverse employment action.  Moreover, Plaintiff declined the offer of "demotion" to a GS-04 position, so she ultimately did not suffer a harm or loss with respect to a term, condition, or privilege of her employment.  She has also failed to identify a

---

[5] As noted above, Conravey stated that Plaintiff should not be allowed near the cake knives because she had not yet undergone her "psych eval."

similarly-situated employee who was treated more favorably under similar circumstances. And with regard to any claim of reprisal, Plaintiff has not established that Conravey was aware of her protected EEOC activity.  Plaintiff did not file her informal complaint until July 6, 2015 and Conravey testified that he was not aware of her EEOC activity until the meeting with Moore on July 24, 2015.  (Rec. doc. 45-10 at pp. 584-85).

Defendant also argues that Conravey articulated a legitimate non-discriminatory reason for his actions.  Conravey testified that he met with Plaintiff because she needed instructions in writing, and it was his plan to do that.  (*Id.* at pp. 635-40).  During the discussion, Plaintiff raised her need for computer training.  (*Id.*).  As an Office Automation Assistant, he felt that Plaintiff should have already possessed these skills and brought them to the job.  (*Id.*).  Conravey only asked her if she would consider voluntarily agreeing to a GS-04 trainee position so that he would be rating her as a trainee rather than at the full performance level.  (*Id.*).  Plaintiff needed more training than he expected on normal administrative duties and automation, and he was trying to avoid rating her low as a GS-05 employee.  (*Id.*).  When he told her that she would be paid less in the GS-04 position, Plaintiff said she was not interested, and that was the end of the conversation.  (*Id.*). Plaintiff thus never suffered an adverse employment action as she remained in her GS-05 position with her same pay.   Conravey denies offering the GS-04 position to Plaintiff to harass her based on her race, sex, medical condition, or prior EEOC activity (about which he did not even know).  (*Id.* at pp. 584-85, 609).  The Court finds that Plaintiff cannot prove that this *offer* of a change in position, which she rejected without any adverse results and

instead maintained her GS-05 position, is a valid claim for disparate treatment, reprisal, or harassment.[6] The Court finds no merit in this argument.

###### C.   Retaliation

To establish a retaliation claim, a plaintiff must first demonstrate that: (1) she engaged in an activity protected by the ADA; (2) she suffered an adverse employment action; and (3) there is a causal connection between the protected act and the adverse action. *See DeBlanc v. St. Tammany Par. Sch. Bd.*, 640 F. App'x 308, 312 (5th Cir. 2016) (quoting *Seaman v. CSPH, Inc.*, 179 F.3d 297,301 (5th Cir. 1999)). An "adverse action" for the purpose of a retaliation claim is any action that might dissuade a reasonable worker from making or supporting a charge of discrimination, whether related to the ultimate terms of employment. *McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir. 2007). The *McDonnell Douglas* burden shifting framework applies to retaliation claims. *Septimus*, 399 F. 3d at 608.

An individual engages in a protected activity when she opposes any act or practice made unlawful by the ADA. 42 U.S.C. § 12203(a). A causal connection can be established by showing "close timing between an employee's protected activity and an adverse action against [her]." *Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997); *see also Molden v. East Baton Rouge Par. Sch. Bd.*, 715 F. App'x 310, 318 (5th Cir. 2017). The Fifth Circuit has held that close timing may include a period of several months. *Feist v. La. Dep't of Justice, Office of the Attorney Gen.*, 730 F.3d 450, 454 (5th Cir. 2013).

---

[6] Plaintiff argues that Defendant's legitimate non-discriminatory reason is pretextual. This argument ignores the fact that Plaintiff never accepted the *offer* of a "demotion," so she never suffered an adverse employment action. She complains not of any negative review as a GS-05 employee.

Plaintiff maintains that she engaged in protected activity when she spoke to Christopher Moore, Defendant's EEO manager, on June 10, 2015, and when she submitted a discrimination complaint on July 6, 2015, both regarding Conravey.  One day after Plaintiff first contacted Moore, on June 11, 2015, Conravey held a meeting at which he suggested that Plaintiff should accept a demotion or else she would receive a negative performance review as a GS-05 employee.  (Rec. doc. 45-10 at pp. 446-48).  Eight days after Plaintiff submitted her written complaint, Conravey terminated her training detail and, shortly thereafter, assigned her approximately 40% of another employee's total workload without reducing her existing duties.  (*Id.* at pp. 489-90, 803-04).  According to Plaintiff, Conravey then told Plaintiff, in a meeting to discuss her complaint on July 24, 2015, "no one likes you." (*Id.* at p. 42).

Conravey testified that he did not know about Plaintiff's EEOC activity until he met with her and Moore on July 24, 2015.  (*Id.* at pp. 584-85).   Plaintiff alleges that although Conravey denies he was aware of plaintiff's activity when he "offered" to demote her, his June 10, 2015 email to Plaintiff expressly states he had just spoken to Moore.  (*Id.* at p. 498).  But this is no more than Plaintiff's self-serving testimony at her deposition.  Notably, there is no citation in her pleading to the actual email in which Conravey and Moore allegedly engaged.  Plaintiff also contends that while Conravey denies that he was aware of the July 6, 2015 complaint, under Army Regulation 690-600, § 3-8(a), he should have been contacted by the assigned EEO counselor – Waits – within 10 days of her filing the complaint, around the same time that he terminated Plaintiff's training detail without speaking to Thompson.  *See* Army Reg. 690-600, § 3-8(a) ("Usually such inquiries are to be completed within 10 days of assignment of the precomplaint to the EEO counselor.").  But

this is no more than supposition on Plaintiff's part.  Moore declared under penalty of perjury that he met with Plaintiff and Conravey on July 24, 2015 to informally resolve Plaintiff's claim.  (Rec. doc. 45-9 at p. 305).  There is no other evidence in the record – and Plaintiff cites this Court to none – to establish that Conravey knew of Plaintiff's EEOC complaint before July 24, 2015.  And while Conravey told her that "no one likes you" at the meeting with Moore, Moore admonished him, telling him that such a comment was inappropriate.  (*Id.*).

Finally – in what is a crucial blow to Plaintiff's claim for retaliation – Plaintiff suffered no adverse employment reaction as a result of any of these alleged actions on Defendant's part.  Title VII's antiretaliation provision protects an individual, not from all retaliation, but from retaliation that produces an injury or harm.  *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. 53, 67 (2006).  To establish an adverse employment action, a plaintiff must demonstrate that "a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  *Id.* at 68.  The requirement that the challenged action be *materially adverse* is crucial to separate significant from trivial harms. *See id.*  "An employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience."  *Id.*  Conravey's statement that "no one likes you" is no more than a petty slight or minor annoyance.  Plaintiff experienced no adverse employment action because of it – she was not fired, demoted, disciplined, or affected in any way.  Title VII is not a "general civility code" for the workplace.  *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (citing *Oncale v. Sundowner Offshore Servs., Inc.*,

523 U.S. 75, 80 (1998)).  Properly applied, courts filter out of Title VII complaints attacking "the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing." *Id. (quoting* B. Lindemann & D. Kadue, Sexual Harassment in Employment Law 175 (1992) (footnotes omitted)).  A recurring point in Supreme Court opinions is that simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment.  *Id.*  (internal citations and quotations omitted).  The evidence of record reveals that Plaintiff suffered no adverse employment action as retaliation for her filing of her EEOC complaint but only suffered the ordinary tribulations of a workplace.

D.     **Hostile Work Environment**

Plaintiff also alleges a claim for hostile work environment under Title VII. Specifically, Plaintiff alleges that on two different occasions, her co-worker, Marianna Zimmerman, exhibited harassing behavior in the office.  She claims that Zimmerman yelled at her in front of Waits about asking him questions.  (Rec. doc. 1 at p. 14).  She also claims that Zimmerman made inappropriate comments to another employee, James St. Germain, Chief of Contracts Management Branch in Construction Division.  (*Id.*).  Plaintiff also asserts that on June 19, 2015, Conravey taught a Suicide Prevention Training class, in which he used Plaintiff as an example of a "Suicidal Co-Worker" when he made a reference about cake knives in her possession before she had her "psych eval."  (*Id.* at pp. 9-10).  She also asserts that on July 24, 2015, Mr. Conravey commented that "no one likes her."  (*Id.* at p. 17).

To establish a claim of hostile work environment under Title VII, a plaintiff must prove that she (1) belongs to a protected group; (2) was subjected to unwelcome

harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment; (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action. *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012) (citing *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002) (citations omitted)).   It is undisputed that Plaintiff belongs to a protected group as a black, disabled female.  The other factors are not so clear.

Harassment affects a "term, condition, or privilege of employment" if it is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  *Ramsey*, 286 F.3d at 268 (quotation marks and citations omitted).  Workplace conduct "is not measured in isolation." *Id.*   (quotation marks and citation omitted).  To deem a work environment sufficiently hostile, "all of the circumstances must be taken into consideration."  *Id.*  This includes "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  *Id.*  (quotation marks and citations omitted).  To be actionable, the work environment must be "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so."  *Faragher*, 524 U.S. at 787 (citation omitted).  While a claim of hostile work environment entails an objective test, the Court should not disregard plaintiff's disability in assessing the severity of defendant's conduct.  *See, e.g., Lowe v. Am. Eurocopter, L.L.C.*, No. 1:10CV24-A-D, 2010 WL 5232523, at *9 (N.D. Miss. Dec. 16, 2010) (finding hostile work environment when plaintiff was harassed for parking in handicap parking

27

spot, treated differently from other employees based on obesity, and forced to perform additional work stated claim for hostile work environment).

Plaintiff argues that Defendant created a hostile work environment when it failed to accommodate her disability, treated her less favorably than others, retaliated against her protected activity, and exacerbated her disability through repeated harassing comments concerning her mental health. Having reviewed the record, the Court cannot find that the conduct about which Plaintiff complains was so "sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment." *Ramsey*, 286 F.3d at 268 (quotation marks and citations omitted); *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (citing Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 65 (1986) ("[M]ere utterance of an . . . epithet which engenders offensive feelings in an employee," . . . does not sufficiently affect the conditions of employment to implicate Title VII.")).

Plaintiff complains of a handful of *isolated* instances of harassment. Plaintiff was reprimanded by Zimmerman, and Zimmerman allegedly said something derogatory to St. Germain about Plaintiff. The Court notes that an employee cannot truly expect to work at a place of employment and ***never*** expect a reprimand in some form or another. Moreover, this Court has no idea of the content of either the reprimand or the statement to St. Germain as Plaintiff only alleges that the reprimand and the statement occurred, not what the content was. There is no evidence that the reprimand or the statement to St. Germain constituted harassment or referenced Plaintiff's race, sex, or disability. That leaves only the statements by Conravey concerning the cake knives and that "no one likes her" – the only comments about which this Court knows the content. While certainly inappropriate and demeaning – and this Court would never condone such behavior or speech – these

28

statements in and of themselves are simply too isolated and do not constitute severe and pervasive conduct that permeated Plaintiff's workplace. They constitute no more than mere utterances on the part of a particularly insensitive individual. This claim fails.

### E.    Constructive Discharge

Plaintiff was not fired; she resigned. A resignation is actionable under Title VII, allowing the plaintiff to seek compensatory damages for events after the resignation only if the resignation qualifies as a constructive discharge. *Faruki v. Parsons*, 123 F.3d 315, 319 (5th Cir. 1997). To prove a constructive discharge, a "plaintiff must establish that working conditions were so intolerable that a reasonable employee would feel compelled to resign." *Id.* To determine whether a reasonable employee would feel compelled to resign, the Fifth Circuit has considered the relevancy of the following events:

> (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement [or continued employment on terms less favorable than the employee's former status]. . . .

*Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 566 (5th Cir. 2001) (quoting *Brown v. Bunge Corp.*, 207 F.3d 776, 782 (5th Cir. 2000) (alteration in original) (quoting *Barrow v. New Orleans Steamship Ass'n*, 10 F.3d 292, 297 (5th Cir. 1994)). Constructive discharge ***requires a greater degree of harassment than that required by a hostile environment claim***. *Benningfield v. City of Houston*, 157 F.3d 369, 378 (5th Cir. 1998). Discrimination alone, without aggravating factors, is insufficient for a claim of constructive discharge. . . . *Boze v. Branstetter*, 912 F.2d 801, 805 (5th Cir. 1990); *Landgraf v. USI Film Prods.*, 968 F.2d 427, 429-30 (5th Cir. 1992).

This Court makes short shrift of this claim.  Because this Court finds that Plaintiff did not work in a hostile work environment, this Court cannot find that any alleged harassment arose to such a degree as to justify any claim by Plaintiff for constructive discharge. *Benningfield*, 157 F.3d at 378.  This claim too fails.

## V.    Conclusion

For the foregoing reasons,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment (Rec. doc. 45) filed by Defendant Christine Wormuth, Secretary of the Army ("Defendant") is **GRANTED**, and Plaintiff's claims against Defendant Christine Wormuth, Secretary of the Army, are **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, this _14th_ day of _____March_____, 2022.

**MICHAEL B. NORTH**
**UNITED STATES MAGISTRATE JUDGE**